UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DAVID C. ARNDT | Criminal No. 04-CR-10166-RGS |

**DAVID C. ARNDT'S MOTION FOR *DE NOVO* REVIEW AND REVOCATION OF MAGISTRATE'S DETENTION ORDER OR, IN THE ALTERNATIVE, AMENDMENT OF DETENTION ORDER TO GRANT CONDITIONAL RELEASE**

**I. INTRODUCTION**

The criminal charges Defendant David Arndt ("Dr. Arndt") faces in this Court following his arrest on June 2, 2004 are not new. The current pending charges arise out of the exact same transaction for which Dr. Arndt was arrested on August 8, 2003 and charged in the Suffolk County Superior Court. Dr. Arndt faced ten years in state prison on the Suffolk County charge, before the Commonwealth of Massachusetts dismissed the case in deference to the instant indictment. Although he faced serious criminal charges with severe sanction, Dr. Arndt never attempted to flee Massachusetts while he was free on bail ordered by the Suffolk County Superior Court. Dr. Arndt also knew, months prior to his arrest, about the federal grand jury proceedings that gave rise to the instant indictment. Dr. Arndt never fled or obstructed the investigation. Nonetheless, without specific evidence to prove that Dr. Arndt currently poses a risk of flight or danger to the community, the Magistrate (Bowler, C.M.) ordered Dr. Arndt detained pending trial. (See Memorandum and Order on Government's Motion for Detention

{K0286590.2}

("Detention Order"), at Exhibit 1). Based upon the facts and circumstances specific to this case, this Court must reverse the Magistrate's Detention Order.

Alternatively, this Court should release Dr. Arndt with conditions pending trial. Dr. Arndt is a long-standing member of the Boston community, and has the full support of his parents, who are also doctors and reside in Newton, Massachusetts. Dr. Arndt is ready and willing to comply with the stringent conditions of release he proposes below, and Dr. Arndt's supportive parents are ready to post $75,000.00 cash as security for their son's appearance.

## II. CHRONOLOGY AND RELEVANT BACKGROUND

The following facts are taken from the evidence presented at the initial hearing on detention held before the Magistrate on June 4, 2004, June 23, 2004, and June 28, 2004. The transcripts of the proceedings before the Magistrate are contained in the Appendix filed by Dr. Arndt at Exhibit 2, 3, and 4. Dr. Arndt also submits at this review stage the Affidavit of Stephen R. Delinsky, Esquire. The Affidavit of Attorney Delinsky further proves that Dr. Arndt knew of the federal investigation prior to his arrest on June 2, 2004. The Affidavit of Attorney Delinsky is at Exhibit 5.

A.  <u>Dr. Arndt's Education and Family Background</u>

Dr. Arndt is 43 years old. Dr. Arndt received his degree in medicine from Harvard Medical School in 1992. (<u>See</u> Curriculum Vitae of Dr. Arndt, at Exhibit 6). After graduating, Dr. Arndt was selected for an intensive surgery residency, where he completed intricate surgeries at the top Boston teaching hospitals. After completing his residency, Dr. Arndt entered a spinal surgery fellowship at Tulane University School of Medicine. Thereafter, Dr. Arndt returned to

{K0286590.2}

2

Massachusetts and joined Associates in Orthopedics and Sports Medicine, Inc. in Wellesley, Massachusetts as a surgeon. Dr. Arndt held privileges at Mount Auburn Hospital through 2002.[1]

Dr. Arndt grew-up in Newton, Massachusetts with his parents Dr. Kenneth Arndt and Dr. Anne Arndt, and sister Jennifer Arndt. The Arndt family has resided in Newton since 1967. Dr. Kenneth Arndt is a clinical professor of dermatology with appointments at Harvard Medical School, Yale Medical School, and Dartmouth Medical School. Dr. Kenneth Arndt is also in private practice in Newton, Massachusetts. Dr. Anne Arndt holds an appointment in the Department of Psychiatry at the Massachusetts General Hospital, and is an instructor at the Harvard Medical School.

B.   The Middlesex County Charges

On October 9, 2002, Dr. Arndt appeared at the Middlesex County Superior Court pursuant to a summons, and was arraigned on nine indictments for various charges, including statutory rape of a child (hereinafter the "Middlesex Indictments or the "Middlesex County Case"). (See Summons to Appear and Notice of Arraignment, at Exhibit 7; Middlesex County Docket Entries, at Exhibit 8). Dr. Arndt faces a sentence of life imprisonment, in addition to mandatory sex offender registration, if he is found guilty on all charges. See G. L. c. 265, § 23; G. L. c. 272, § 3. After pleading not guilty to the charges, Dr. Arndt was released on bail on the Middlesex Indictments. (Exhibit 8). The bail conditions ordered by the Middlesex County Superior Court included cash security in the amount of $1,000.00, no unsupervised contact with children, and no contact with the complaining witnesses. (See Exhibit 8; Supervision Order, at

---

[1] Dr. Arndt's medical license was summarily suspended by the Massachusetts Board of Registration in Medicine in July 2002, following a highly-publicized incident involving a surgery at Mount Auburn Hospital. The Board of Registration proceedings have no bearing on the pending criminal charges and are irrelevant to the issue of detention, as further discussed *infra*.

{K0286590.2}

Exhibit 9). Dr. Arndt was not prohibited from leaving Massachusetts. Nonetheless, Dr. Arndt appeared at every court event as required, and never defaulted.

C. The Suffolk County Charges

On August 8, 2003, Dr. Arndt was detained for interrogation in conjunction with a drug sting conducted by Massachusetts and federal authorities at the Chandler Inn in Boston, Massachusetts. After the federal authorities declined prosecution of the case, Dr. Arndt was arrested by Massachusetts law enforcement. (Hearing Day 2, pp. 44-50). Dr. Arndt was held and charged with possession with intent to distribute methamphetamine, as a Class B substance. (See BMC Complaint, at Exhibit 10). Dr. Arndt faced 10 years in state prison on the drug charge. (Exhibit 10). On August 11, 2003, Dr. Arndt was arraigned on the charges. (See BMC Docket Entries, at Exhibit 11). On August 12, 2003, a judge of the Boston Municipal Court set bail in the amount of $500,000.00 surety or $50,000.00 cash, and ordered Dr. Arndt not to leave Massachusetts. (Exhibit 11). However, Dr. Arndt was not released from custody. Rather, a judge of the Boston Municipal Court revoked Dr. Arndt's bail set in the Middlesex County Case, and ordered Dr. Arndt detained in the Suffolk County jail for a period "not to exceed sixty (60) days" pursuant to G. L. c. 276 § 58. (Exhibit 11).[2] Thereafter, because of the new charges in Suffolk County, the Middlesex Superior Court increased Dr. Arndt's cash bail to $20,000.00. (Exhibit 8).

---

[2] The Magistrate appears to make much of the decision by a Single Justice of the Massachusetts Supreme Judicial Court (Sosman, J.), affirming the bail order issued by the Boston Municipal Court that was based, in part, on the evidence of Dr. Arndt's possession of a large sum of money while traveling in 2003. (Detention Order, pp. 40-41). However, the Single Justice merely tracked the bail order of the Boston Municipal Court. Moreover, notwithstanding the evidence of the money, a judge of the Boston Municipal Court remitted Dr. Arndt to bail in the Suffolk County Case, which the Single Justice affirmed.

{K0286590.2}

4

While Dr. Arndt was detained in the Suffolk County jail, a Suffolk County grand jury indicted Dr. Arndt on the same drug charge pending in the Boston Municipal Court (the "Suffolk County Indictment") based upon the events of August 8, 2003. (See Suffolk County Indictment, at Exhibit 13). The case was transferred from the Boston Municipal Court to the Suffolk County Superior Court. (Exhibit 11; Suffolk Superior Court Docket Sheets, at Exhibit 12). On October 9, 2003, Dr. Arndt was arraigned on the Suffolk County Indictment. (Exhibit 12). Dr. Arndt was released from custody on the same date, after the $50,000.00 cash bail posted by his parents in the Boston Municipal Court was transferred to the Suffolk County Superior Court. (Exhibit 12). The Boston Municipal Court case was dismissed upon the return of the Suffolk County Indictment. (Exhibit 11).

On November 12, 2003, Dr. Arndt filed in the Suffolk County Case a request for a court-ordered examination pursuant to G. L. c. 111E, § 10, to determine whether Dr. Arndt was a drug dependent person who could benefit from treatment. (Exhibit 12). After delay occasioned by limited court resources, the court clinician met with and evaluated Dr. Arndt. On April 1, 2004, the court clinician filed under seal an evaluation report of Dr. Arndt with the Suffolk Superior Court, pursuant to G. L. c. 111E, § 10. (Exhibit 12).

After his release on bail in October 2003, Dr. Arndt appeared at every required court appearance held before the Middlesex County Superior Court, including appearances on November 7, 2003, January 20, 2004, and February 24, 2004. (Exhibit 8). Likewise, after his release on bail in October 2003, Dr. Arndt appeared at every required court appearance held before the Suffolk Superior Court, including appearances on November 14, 2003, January 14,

{K0286590.2}

2004, February 10, 2004, March 23, 2004, and May 21, 2004. (Exhibit 12). Dr. Arndt has never defaulted on any court appearance in either case.

### D. Dr. Arndt Learns About the Federal Investigation

In the spring of 2004, Dr. Arndt learned that he was a target of a federal investigation. Dr. Arndt knew that his partner, Alfredo Fuentes, had been contacted and interviewed by federal investigators. (Delinsky Affidavit, ¶ 3). Counsel spoke to the Assistant United States Attorney, who confirmed the ongoing investigation of Dr. Arndt. (Delinsky Affidavit, ¶ 4 ). In addition, in April 2004, one of the cooperating witnesses for the Government, referred to as CW-3, told Dr. Arndt that he had been subpoenaed to testify before a federal grand jury concerning Dr. Arndt. (Hearing Day 2, pp. 37-40; Hearing Day 3, pp. 29-33). CW-3 told Dr. Arndt that he intended to tell the truth before the grand jury. (Id.). Dr. Arndt never fled or obstructed justice after learning about the federal investigation.

### E. The Federal Court Indictment

On May 27, 2004, a federal grand jury returned an indictment against Dr. Arndt (hereinafter the "Federal Indictment"). Federal agents arrested Dr. Arndt on June 2, 2004. The charges contained in the Federal Indictment duplicated the Suffolk County Indictment. Accordingly, the Suffolk County District Attorney's Office announced in press accounts following the arrest of Dr. Arndt on the Federal Indictment that it intended to dismiss the Suffolk County Indictment. (See Boston Globe Article dated June 3, 2004, at Exhibit 14). On June 11, 2004, the Suffolk County District Attorney's Office filed a nolle prosequi of the Suffolk County Indictment. (See Exhibit 12).[3]

---

[3] The Magistrate incorrectly states at page 15 of the Detention Order that the Suffolk County Case is still pending.

{K0286590.2}

## III. ARGUMENT

A. This Court Must Conduct *De Novo* Review of the Government's Request for Pretrial Detention

Dr. Arndt has a statutory right to review by this Court of the Magistrate's detention order. See 18 U.S.C. § 3145(b). This Court must conduct a *de novo* review of the Government's request to detain Dr. Arndt. See United States v. Koenig, 912 F. 2d 1190, 1191-1193 (1st Cir. 1990); United States v. DiGiacomo, 746 F. Supp. 1176, 1181 (D. Mass. 1990). See also United States v. Goba, 240 F. Supp. 2d 242, 245 (W.D. N.Y. 2003). In conducting a *de novo* review, this Court should reach its own independent findings of fact and conclusions of law concerning detention, without deference to the decision of the Magistrate. See Koenig, 912 F. 2d at 1193. See also Goba, 240 F. Supp. 2d at 245.

At the review stage, the Government is held to the same legal standard of carrying the burden of proving that pretrial detention of Dr. Arndt is necessary and required. See DiGiacomo, 746 F. Supp. at 1181. "In our society, liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U. S. 739, 747 (1987). Before ordering detention, this Court must first have to find by clear and convincing evidence[4] that no condition(s) would reasonably assure the safety of the community, and/or by a preponderance of the evidence that no condition(s) would reasonably assure Dr. Arndt's appearance at trial. See United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991).

Contrary to the Government's assertion, the mere fact that Dr. Arndt has been charged with a crime under the Controlled Substances Act at 21 U. S. C. § 801, et seq., does not mandate detention. The decision to detain must be based on the specific facts of each case. Although "the

---

[4] The clear and convincing standard "requires that the evidence support such a conclusion with a high degree of certainty." United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985).

{K0286590.2}

7

judge or magistrate continues to keep in mind, along with the other factors listed in § 3142(g), the fact found by Congress--that generally drug traffickers pose special risks of flight," "the magistrate or judge may still conclude that what is true in general is not true in the particular case[.]" United States v. Perez-Franco, 839 F. 2d 867, 870 (1st Cir. 1988). The burden of persuading this court that "no condition or combination of conditions will reasonably assure" Dr. Arndt's presence at trial rests with the Government. United States v. Perez-Franco, 839 F. 2d at 870. Even under 18 U. S. C. § 3142(f)(1)(c), Dr. Arndt bears "only the burden of production; that is, he must present some evidence to rebut the flight presumption." United States v. Perez-Franco, 839 F. 2d at 870.

To determine whether the Government has met its burdens, this Court must consider a number of factors: (1) Dr. Arndt's personal history and characteristics; (2) the nature and circumstances of the charged offenses; (3) the strength of prosecution's case; and (4) the nature and degree of danger to the community. See 18 U. S. C. § 3142(g).[5] Applying these factors as discussed below, this Court should deny pretrial detention, and order Dr. Arndt released.

### B. The Government Has Not Satisfied Its Burden of Proving Detention of Dr. Arndt Is Required

#### 1. The Government has not proven by clear and convincing evidence that Dr. Arndt poses a risk of flight

The fact that Dr. Arndt faces a mandatory minimum prison sentence of ten years on the current federal charges does not justify a finding that he will flee. Dr. Arndt faces a sentence of life imprisonment in a state prison on the charges contained in the Middlesex County Indictments. Nonetheless, Dr. Arndt appeared voluntarily at Middlesex Superior Court when

---

[5] Dr. Arndt does not concede the strength of the Government's case. However, for the purposes of this motion, Dr. Arndt focuses on the risk of flight and danger to the community.

{K0286590.2}

8

summonsed to his arraignment in 2002, and was released on bail by a judge of Middlesex County. Since 2002, Dr. Arndt never fled or attempted to flee. Dr. Arndt, as he was permitted, left Massachusetts while on bail, and always returned. Dr. Arndt attended each and every mandated court appearance in Middlesex County Superior Court, and never once defaulted.

Likewise, Dr. Arndt faced a sentence of 10 years in state prison in the Suffolk County Case. Yet, Dr. Arndt never fled. After the revocation order terminated on October 9, 2003, Dr. Arndt was released on bail and remained free in the community without incident until his arrest on the Federal Indictment on June 2, 2004. Dr. Arndt attended every court appearance in the Suffolk County Case, and never once defaulted.

Significantly, Dr. Arndt was bailed in the Suffolk County Case on essentially the exact same drug charge contained in the Federal Indictment. Both the state and federal cases arose out of the events on August 8, 2003 at the Chandler Inn. (Hearing Day, pp. 50-52). The Federal Indictment specifically lists August 8, 2003 as the operative date in both Count I for conspiracy to distribute methamphetamine and Count II for possession with intent to distribute methamphetamine. On the face of the Federal Indictment, the Government is alleging in Count I that the conspiracy began in April 2003 and culminated in the events on August 8, 2003. Postal Inspector McCarran in his Affidavit in Support of Search Warrant sworn on August 8, 2003 specifically cited to a potential violation of the federal Controlled Substances Act as the basis for the search of Dr. Arndt's computer arising out of the events of August 8, 2003. During his hearing testimony before the Magistrate, Inspector McCarran substantially relied upon as evidence in support of the charges in the Federal Indictment the events that led to the sting at the Chandler Inn on August 8, 2003, the interrogation of Dr. Arndt on August 8, 2003, the items

{K0286590.2}

seized pursuant to the execution of the search warrant on August 8, 2003, and the subsequent investigation derived from the items seized and interrogation of Dr. Arndt. (See, e.g., Hearing Day 1). After the federal authorities initially declined prosecution, Dr. Arndt was charged and subsequently indicted in Suffolk County based on the same facts arising out of the sting at the Chandler Inn and items seized during the execution of the search warrant on August 8, 2003.

Even if the charges in the Federal Indictment are broader than the Suffolk County Indictment, the Government presents no evidence that Dr. Arndt is suddenly likely to flee because its investigation may have expanded after August 8, 2003. It is undisputed that Dr. Arndt knew of the federal grand jury investigation months prior to his arrest on June 2, 2004. (Delinsky Affidavit, ¶¶ 3-5). Dr. Arndt knew that the Government was interviewing witnesses about his alleged activity involving methamphetamine. At least one cooperating witness for the Government told Dr. Arndt in April 2004 that he was subpoenaed to testify and was going to tell the grand jury the truth about Dr. Arndt. (Hearing Day 2, pp. 37-40; Hearing Day 3, pp. 29-33). Yet, Dr. Arndt never left Massachusetts, and continued to appear at all mandated court appearances. In fact, despite learning about the federal investigation at least as early as April 2004, Dr. Arndt attended a required appearance in Suffolk County Superior Court on May 21, 2004, less than two weeks before his arrest on the Federal Indictment on June 2, 2004. After he was arrested on June 2, 2004, the Government never found any evidence that Dr. Arndt was planning to flee, such as a large amount of cash or doctored personal papers. Instead, Dr. Arndt has always maintained his innocence and commitment to appearing to defend the charges.

> 2. The Government has failed to establish that Dr. Arndt currently poses a danger to the community

"Undoubtedly, the safety of the community can be reasonably assured without being absolutely guaranteed." United States v. Tortora, 922 F. 2d 880, 884 (1st Cir. 1990). "Requiring that release conditions guarantee the community's safety would fly in the teeth of Congress' clear intent that only a limited number of defendant's be subject to pretrial detention." Id.

Significantly, two Massachusetts state courts have already determined that Dr. Arndt could safely be included in the community despite the allegations of criminal conduct. Although serious, the Middlesex County Indictment does not automatically prove that Dr. Arndt currently poses a danger to the community. The acts alleged in the Middlesex County Indictment occurred in September 2002. A judge of the Middlesex County Superior Court released Dr. Arndt twice on bail, once at his arraignment in 2002 and once following his arrest in the Suffolk County Case in 2003. The stringent bail conditions ordered by the Middlesex Superior Court, which will remain in effect if Dr. Arndt is released from detention, includes prohibiting Dr. Arndt from having unsupervised conduct with children. Notwithstanding the serious charges, the Middlesex Superior Court believed that the conditions imposed on Dr. Arndt were sufficient to ensure the safety of the community. Likewise, a judge of the Boston Municipal Court and a Magistrate of the Suffolk County Superior Court both released Dr. Arndt on cash bail following his arrest in August 2003, notwithstanding the pending Middlesex County case. Certainly, the courts of the Commonwealth of Massachusetts would not have permitted Dr. Arndt to re-enter his Boston-based community if they believed he posed a danger to the citizens of Massachusetts. Other than now being charged with federal drug crimes, the facts considered by the two Massachusetts courts in deciding to release Dr. Arndt have not changed. Based upon the specific circumstances

{K0286590.2}

11

of Dr. Arndt's case, rather than generalizations about drug crimes proffered by the Government, this Court should be assured, just as the Massachusetts state courts were reasonably confident, that Dr. Arndt can be safely released pending trial.

In addition, according to the Federal Indictment, Dr. Arndt's last alleged criminal act occurred on August 8, 2003. After his release from detention on October 9, 2003, Dr. Arndt complied with every court order, engaged in work activities, and sought treatment and counseling with the Massachusetts Physician Health Services. (See Physician Health Services Letter, attached at Exhibit 16; See also Pretrial Services Report). Dr. Arndt engaged in all of these activities before the return of the Federal Indictment and his arrest on June 2, 2004. (Exhibit 16).

Dr. Arndt did not concoct with the assistance of counsel an outpatient treatment and counseling program supervised by Physician Health Services to avoid detention, as the Magistrate implies. (See Detention Order, pp. 37-38). The letter from Physician Health Services makes clear that Dr. Arndt sought evaluation with the goal of commencing a treatment program prior to his arrest on June 2, 2004. Dr. Arndt did not participate in any outpatient treatment or counseling services only because he was subsequently arrested and detained. In addition, Dr. Arndt requested in the Suffolk County Case in November 2003 an evaluation from the court clinician to determine if he was a drug dependent person who would benefit from treatment, in accordance with G. L. c. 111E, § 10. Completion of the evaluation process was delayed until April 2004 because of limited court resources, not due to any inaction on the part of Dr. Arndt. Dr. Arndt did not learn of the filing of the evaluation report until he appeared at court in the Suffolk County case on May 21, 2004. Dr. Arndt was arrested less than two weeks later. Thus,

Dr. Arndt's request for treatment was not spurred solely in response to the serious situation he now faces, contrary to the Magistrate's finding that his efforts were "too little too late."

Dr. Arndt's recognition of his need for and request to undergo treatment and counseling for a drug addiction after his arrest on August 8, 2003 belies his intention to harm the public if he is released. Dr. Arndt's decision to take responsibility for his drug problem shows positive personal judgment inconsistent with conduct typically expected of a hardened drug dealer, as the Government seeks to portray. The Government conceded that Dr. Arndt was an addict. (Hearing Day 2, p. 52). The hearing testimony supports the conclusion that Dr. Arndt's involvement with methamphetamine was directly linked to his addiction. During the search of Dr. Arndt's home office on August 8, 2003, federal agents seized evidence consistent with drug use, not drug trafficking. (Hearing Day 2, pp. 56-58). Agents never found large quantities of cash or drugs, measuring devices, or transaction logs consistent with drug dealing activity. (Hearing Day 2, pp. 55-59). The Government presented no evidence to suggest, and has not alleged, that Dr. Arndt resumed alleged drug trafficking activity after his release from detention on October 9, 2003. Dr. Arndt did not fit the profile of a drug dealer. He did not live a lavish lifestyle. According to the Government's evidence, Dr. Arndt sold furniture to obtain cash. (Hearing Day 3, p. 24). The program devised by the Physician Health Services for Dr. Arndt mandates consistent counseling, treatment, and monitoring. (Exhibit 16). The Physician Health Services program ensures that Dr. Arndt will not revert to the drug use, or he will be immediately returned to jail.

Finally, the Magistrate in the Detention Order also incorrectly references the Board of Registration in Medicine proceedings as a factor in assessing the need for detention. (Detention Order, pp. 38,41). The action by the Board in no way proves that Dr. Arndt is a danger to the

{K0286590.2}

community in the context of the pending criminal charges. The Board investigation involves Dr. Arndt's conduct of leaving the operating room for a brief time during a surgery in July 2002. The finding of a "danger to the community" in the summary suspension order issued by the Board relates solely to Dr. Arndt's conduct in the practice of medicine. Such a finding is boilerplate language that tracks the applicable Massachusetts regulation, and is a prerequisite to the Board summarily suspending, without due process, any licensed physician. See 243 C. M. R. 1.03(11)(a). Thus, the Board proceedings have no bearing on the issue of dangerousness for the purpose of the detention analysis before this Court.[6]

### C. Dr. Arndt's Personal History and Characteristics Weigh in Favor of Release

Prior to his recent personal difficulties, Dr. Arndt was a well-respected and highly regarded surgeon in the Massachusetts medical community. Despite the recent allegations, Dr. Arndt's credentials as a spine and orthopedic surgeon are impressive. Dr. Arndt helped many patients with debilitating injuries and other diseases. By all accounts, Dr. Arndt is an intelligent, caring, and compassionate physician whose character should not be judged in isolation.

Dr. Arndt has no prior felony convictions.[7] In addition, Dr. Arndt has a long-established network of friends in the Boston area. Moreover, Dr. Arndt's personal bonds with his family in

---

[6] The Magistrate also erroneously admitted and relied upon as evidence of dangerousness a report by Provincetown Police concerning an alleged assault and battery by Dr. Arndt in 1998 . (Detention Order, pp. 33-34; Government Ex. 9). Defense counsel at the hearing objected to the admission of such irrelevant and unsubstantiated criminal history. (Hearing Day 3, pp. 37-38). Dr. Arndt was never convicted of any crime arising out of the alleged incident. Dr. Arndt never admitted to assaulting the alleged victim. The case was subsequently dismissed against Dr. Arndt without any further court action. This information has no bearing on the issue of dangerousness of Dr. Arndt, and should not be considered by this Court upon review of the evidence.

[7] Dr. Arndt was convicted of a federal misdemeanor in 1998. On that charge, Dr. Arndt received probation supervised by the Pretrial Services Office in this Court. Pretrial Services has reported that Dr. Arndt was fully compliant and cooperative for the duration of his supervised program. This misdemeanor charge was part of Dr. Arndt's criminal history when the Middlesex Superior Court and the Suffolk Superior Court ordered Dr. Arndt released on bail pending trial.

Newton cannot be questioned. Given Dr. Arndt's commitments to his family in the Boston area, this Court can reach only one conclusion: Dr. Arndt's family ties weigh very heavily in favor of release. Compare United States v. Pierce, 107 F. Supp. 2d 126, 133 (D. Mass. 2000)(finding defendant posed a serious risk of flight where his primary family ties were in Florida, he resided in Florida for several years prior to his arrest, he used a Florida driver's license for identification).

### D. Conditions Other Than Detention Will Suffice to Alleviate Any Risk of Danger or Flight

To ensure that pretrial detention is reserved for the rare case, § 3142(c) mandates that Dr. Arndt be "subject to the least restrictive condition(s) that "will reasonably assure the safety of any other person and the community." This Court must find the least restrictive measures by progressing step-by-step through the conditions set forth in 18 U. S. C. § 3142. See United States v. Maull, 773 F. 2d 1479 (8th Cir. 1985). With these principles and facts in mind, and only if this Court finds that there is some degree of danger to the community or risk of flight, this Court should release Dr. Arndt subject to the conditions this Court deems appropriate.[8] Dr. Arndt submits that the following conditions will lessen any concerns about risk of flight or danger to the community.

First, Dr. Arndt's parents have agreed to post cash bail in the amount of $75,000.00 with this Court to secure Dr. Arndt's appearance. This $75,000.00 is in addition to the $20,000.00

---

[8] In cases with far more egregious facts, courts have ordered defendants released under specified conditions. For example, in United States v. DiGiacomo, 746 F. Supp. 1176 (D.Mass. 1990), the Court found a combination of conditions short of pretrial detention appropriate where government offered evidence that defendants were "made" members of the Mafia, specifically, a Capo and a Soldier. The defendants faced a myriad of serious charges, from RICO to conspiracy to distribute narcotics to extortion to subornation of perjury and obstruction of justice. See id. at 1179 n.1. Nevertheless, the Court ordered the defendants released pursuant to several strict conditions. It follows then that, as in DiGiacomo, this Court can adequately ensure the safety of the community, without resorting to the egregious measure of pretrial detention

{K0286590.2}

15

cash bail that will remain in the Middlesex County Case. This total bail exceeds the $50,000.00 ordered and previously posted by Dr. Arndt's parents in the Suffolk County Case. In addition, the agreement by Dr. Arndt's parents to post cash bail, knowing that they risk losing their savings should Dr. Arndt violate the conditions of his pretrial release, evidences the trust and commitment they have for their son, despite the serious pending charges.

Second, Dr. Arndt will enter into a contract with the Physician Health Services of the Massachusetts Medical Society, in a form consistent with the proposed contract attached hereto at Exhibit 16. Information concerning the Physician Health Services program is attached hereto at Exhibit 15. Dr. Louis Sanchez, Director, will serve as the monitor for Dr. Arndt under the contract. The contract involves a complete assessment of Dr. Arndt's current condition, and a regimented treatment program for behavioral and substance abuse issues, to include regular substance screening. The treatment staff for Dr. Arndt will be members of the Physician Health Services program, once designated. Dr. Sanchez has vast experience in establishing and monitoring similar contracts for physicians. As monitor, Dr. Sanchez will report on the status of Dr. Arndt's compliance with the contract and the program. Dr. Arndt will sign the appropriate releases to permit Dr. Sanchez to report the status of Dr. Arndt to Pretrial Services.

Third, Dr. Arndt will continue to live at his residence located at 26 Rutland Street, No. 3, Boston, Massachusetts. However, Dr. Arndt will be restricted. Dr. Arndt will agree to wear an electronic monitoring device that limits his movement to his home, other than for attorney visits, to attend court proceedings, and to participate in treatment sessions. Dr. Arndt will notify Pretrial Services when he leaves the house for an authorized meeting, when he arrives at his authorized destination, when he leaves to return home, and when he arrives back at home. Dr.

Arndt also agrees to random, unannounced visits to his home by Pretrial Services, and random screening in addition to the regular screening established by the Physician Health Services contract. Dr. Arndt will continue to work out of his home as a means of employment.

Fourth, Dr. Arndt will agree to continue to comply with his conditions of release ordered by the Middlesex Superior Court. This includes no unsupervised contact with children under 18 years of age, and no contact with witnesses. Dr. Arndt has already relinquished his passport.

Finally, Dr. Arndt agrees to report, by telephone or in person or both, to Pretrial Services to answer questions about his current circumstances.

Dr. Arndt is also amenable to any other standard conditions of release imposed by this Court and Pretrial Services.

## IV. CONCLUSION

For the foregoing reasons, David Arndt request this Court to reverse the Order of Detention issued by the Magistrate, and to release him pending trial. In the alternative, Dr. Arndt requests this Court to order Dr. Arndt's release with the conditions set forth above. Dr. Arndt respectfully requests a hearing on his Motion.

Respectfully submitted,

DAVID C. ARNDT,

By his attorneys,

_____
Stephen R. Delinsky (BBO# 119120)
Peter F. Carr, II (BBO# 600069)
ECKERT SEAMANS, CHERIN & MELLOTT, LLC
One International Place, 18th Floor
Boston, MA 02110
617. 342.6800

**CERTIFICATE OF SERVICE**
I hereby certify that a true copy of the above document was served upon the attorney of record for each other party by mail/hand on 8-27-04

Dated: August 27, 2004

{K0286590.2}

17