UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

---

UNITED STATES OF AMERICA

v.

DAVID C. ARNDT

Criminal No. 04-CR-10166-RGS

---

## SENTENCING MEMORANDUM OF DAVID C. ARNDT

### I. INTRODUCTION

The critical issue in this sentencing is whether the Defendant, David Arndt ("Dr. Arndt"), qualifies for the safety value under 18.U.S.C. 3553(f). The Plea Agreement between the government and the Defendant contemplated that Dr. Arndt qualified for the safety value. In fact during the "Change of Plea Hearing" on June 29, 2005 the government acknowledged Dr. Arndt was safety valve eligible and that his offense level was 31 and his Criminal History Category was 1. However, later the Probation Department determined that Dr. Arndt's Criminal History Category was II and his offense level was 33 because he allegedly committed some of the offense conduct while on federal probation for a misdemeanor conviction, thus raising his criminal history score by two points from 1 to 3. The sentence proposed in the Plea Agreement absent further departures and/or adjustments was between 108–135 months compared with the sentence in the Pre-Sentence Report of between 151–188 months, a substantial difference that is not justified by the law.

II.    Under the Doctrine of Constitutional Avoidance This Court Should
       Decline to Apply the Prior Conviction Exception of <u>Almendarez-Torres</u>
       and Grant David Arndt Safety Valve Relief.

The safety valve statute and the safety valve guideline precluded relief from the

mandatory minimum if "the court finds at sentencing" that the defendant has "more than

1 criminal history point, as determined under the sentencing guidelines." 18 U.S.C. §

3553(f)(1); U.S.S.G. § 5C1.2(a)(1).

The Pre-Sentence Report states that Dr. Arndt has 3 criminal history points. It

alleges that on January 27, 1999 David Arndt was convicted of fraud in connection with

identification documents and was sentenced to three years of probation. As a result of the

conviction the Defendant received 1 criminal history point. The PSI alleged that the

instant offense was committed when the defendant was under the criminal justice

sentence imposed on January 27, 1999 in the United States District Court for the Eastern

District of Louisiana, thus increasing his criminal history points by 2, pursuant to

U.S.S.G. § 4A1.1(d).

If Dr. Arndt were safety valve eligible, his total offense level would be 31 with a

guideline range of 108-135 months. Were this Court to apply the criminal history

guidelines to find more than one criminal history point, the range would increase to 151-

188 months. Thus, judicial fact finding would raise Dr. Arndt's maximum sentence from

108 months to 188 months.

The superseding indictment does not allege that Dr. Arndt was previously

convicted of any crime, nor did he admit to any previous conviction in his plea colloquy.

Thus, if any fact other than a prior conviction were at issue, this Court would be required by United States v. Booker, 543 U.S. 220 (2005), to apply the applicable sentencing guideline as advisory.

As explained below, the prior conviction exception is of questionable constitutional validity, its theoretical underpinnings have been rejected, and a majority of the Supreme Court is poised to overrule it. Thus, this Court should apply the doctrine of constitutional avoidance to hold that, since no facts about a prior conviction were proved or admitted, the finding of additional criminal history points must be advisory.

"[W]here a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." United States ex rel. Attorney General v. Delaware & Hudson Co., 213 U.S. 366, 408 (1909). Since Booker, at least two lower courts have implicitly applied the doctrine of constitutional avoidance to rule inconsistently with Supreme Court decisions that have not yet been overruled but have been called into serious doubt. See United States v. Harris, 397 F.3d 404, 410-13 (6th Cir. 2005) (construing § 924(c) not to apply to firearm type and questioning continuing viability of Harris v. United States, 536 U.S. 545 (2002) after Booker); United States v. Pimental, 367 F.Supp.2d 143 (D. Mass. 2005) (declining to apply enhancement based on acquitted conduct because Booker cast United States v. Watts, 519 U.S. 148 (1997) into serious doubt).

In Almendarez-Torres, 523 U.S. 224 (1998), the defendant admitted his prior convictions in his plea colloquy, but argued that the Fifth Amendment required that they be charged in the indictment. Id. at 227. In a five to four decision, the Court relied on a distinction between

elements and sentencing factors to hold that a prior conviction that raised the maximum sentence was not required to be pled in the indictment. Id. at 226-27, 246-47. The dissent, written by Justice Scalia, would have construed the penalty provision as an element in order to avoid the "genuinely doubtful" question whether the Constitution permits an increase in the maximum punishment based on a fact, whether designated as an element or a sentencing factor, that has not been charged in an indictment and proved to a jury beyond a reasonable doubt. Id. at 251-60.

Likewise, in Apprendi v. New Jersey, 530 U.S. 466 (2000), the Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The Court reserved judgment on the validity of Almendarez-Torres, since a prior conviction enhancement was not at issue, but noted that Almendarez-Torres "represents at best an exceptional departure from the historic practice [of requiring pleading and proof of factors increasing statutory maximums]," id. at 484, 487, emphasized that no question regarding jury trial or standard of proof arose in Almendarez-Torres, and explicitly stated that it may have been incorrectly decided and should be narrowly applied. Id. at 488-489. Furthermore, Justice Thomas in a concurring opinion renounced his swing vote in Almendarez-Torres. Apprendi, at 520-21 (Thomas, J., concurring). Consequently, in Ring v. Arizona, 536 U.S. 584 (2002), the Court explicitly abandoned any distinction for constitutional purposes between elements and sentencing factors. Id. at 605, 609.

Significantly, in Dretke v. Haley, 124 S. Ct. 1847 (2004), the Supreme Court applied the doctrine of constitutional avoidance to Almendarez-Torres, stating: "Respondent contends that Almendarez-Torres should be overruled or, in the alternative, that it does not apply because the

recidivist statute at issue required the jury to find not only the existence of his prior convictions but also the additional fact that they were sequential. These difficult constitutional questions . . . are to be avoided if possible." Id. at 1853. If the Court had made a constitutional ruling rather than construing the statute pursuant to the doctrine of constitutional avoidance, it would have had to consider extending Almendarez-Torres, a Fifth Amendment right to indictment case, to deny Mr. Haley the trial protections of In re Winship, 397 U.S. 358 (1970). Haley, 124 S.Ct. at 1853. This it declined to do.

In Blakely v. Washington, 124 S.Ct. 2531 (2004), the Court again explicitly rejected the notion, upon which Almendarez-Torres was based, that the jury need only find whatever facts the legislature chooses to label elements, while those it labels sentencing factors may be found by the judge. Id. at 2539-40 and 2542 n.13. Instead, all "facts essential to punishment" must be charged in an indictment and proved to a jury beyond a reasonable doubt. Id. at 2536-37 & n.5. The Blakely Court did not mention the prior conviction exception in its holding.

Finally, in United States v. Booker, 543, U.S. 220 (2005), the Court reaffirmed its holding in Apprendi: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." Though the Court recited the prior conviction exception, it was not at issue in the cases before the Court, and the Court entirely ignored Almendarez-Torres in its review of the precedent in this area. To save the Guidelines from unconstitutionality, the remedial majority interpreted the Sentencing Reform Act as prohibiting the guidelines from being applied mandatorily and requiring that they be applied as advisory.

Soon thereafter in Shepard v. United States, 125 S.Ct. 1254 (2005), the Court again strongly indicated that Almendarez-Torres will soon be overturned. Mr. Shepard did not challenge Almendarez-Torres or the prior conviction exception, but portions of the opinion make clear that five Justices would overturn that decision and eliminate the exception. The Court decided, as a matter of statutory construction, that sentencing judges determining whether a prior conviction qualifies as a "violent felony" for purposes of a federal firearms recidivist enhancement should not look beyond judicial documents that memorialize the facts found by the jury or admitted by the defendant. In section III of the opinion, Justice Souter, writing for a four-justice plurality, explained that the Court's holding limiting the scope of judicial fact-finding regarding prior convictions is required by the rule of constitutional evidence or as he stated by the "rule of reading statutes to avoid serious risks of unconstitutionality." 125 S.Ct. at 1263. Judicial fact-finding about a disputed prior conviction "raises the concern underlying Jones v. United States, 526 U.S. 227, 243 n.6 (1999)] and Apprendi: the Sixth and Fourteenth Amendments guarantee a jury standing between a defendant and the power of the state, and they guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence." Id. at 1262. Justice Souter then noted that the dissent charged that the Court's decision "may portend the extension of Apprendi . . . to proof of prior convictions." In response, he said nothing to dispel that impression, but instead observed that defendants could avoid being prejudiced by proof of prior convictions during a jury trial by waiving the right to have the jury decide that issue. Id. at 1263 n.5.

Justice Thomas did not join in Part III only because it did not go far enough. He would find the ACCA unconstitutional as applied to Shepard because it required an increase in the

sentence based on facts (prior convictions) not admitted by the defendant or proven to a jury.

Shepard, 125 S.Ct. at 1264 (Thomas, J. concurring). Justice Thomas stated that Almendarez-Torres

> has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that Almendarez-Torres was wrongly decided. The parties do not request it here, but in an appropriate case, this Court should consider Almendarez-Torres' continuing viability. Innumerable criminal defendants have been unconstitutionally sentenced under the flawed rule of Almendarez-Torres, despite the fundamental "imperative that the Court maintain absolute fidelity to the protections of the individual afforded by the notice, trial by jury, and beyond-a-reasonable-doubt requirements."

Id. at 1264 (internal citations omitted).

In short, even though the Court has continued to cite the prior conviction exception to the now firmly-established constitutional rule that any fact that mandatorily increases the maximum penalty must be charged and proved beyond a reasonable doubt, it is now clear that a majority of the Court is poised to overrule Almendarez-Torres when squarely presented.

Moreover, even if Almendarrez-Torres is still good law, it does not extend to this case. Almendarrez-Torres addressed only the Fifth Amendment right to indictment, and the Court expressly disavowed any holding regarding the manner and standard of proof required to establish the prior conviction. See 523 U.S. at 248. In this case, David Arndt did not plead guilty to any prior conviction or admit to it and he cannot be subjected to a factfinding procedure against his will solely for the purpose of rescuing a statute. See United States v. Jackson, 390 U.S. 570, 580 (1968).

This Court should therefore apply the doctrine of constitutional avoidance to find that the facts of any prior conviction must have been charged in the superseding indictment and admitted

by the defendant or proved to a jury beyond a reasonable doubt, and that since they were not in this case, the application of criminal history points under 18 U.S.C. § 3553(f)(1) and U.S.S.G. § 5C1.2(a)(1) must be advisory.

Therefore, this Court is authorized to find that the safety valve applies and impose a sentence for Dr. Arndt without regard to any statutory mandatory minimum.

III.    The Defendant, David Arndt, is entitled to Downward Departures
        Under the Guidelines

Dr. Arndt is entitled to the following Downward Departures pursuant to the Sentencing Guidelines: (A) diminished capacity; (B) extra-ordinary acceptance of responsibility; (C) vulnerability in prison; and (D) the Defendant's criminal history category significantly over-represents the seriousness of the Defendant's criminal history or the likelihood that the Defendant will commit further crimes.

It is clear that the 2002 Guidelines Book in effect at the time of the offense conduct and not the 2004 Guidelines Book as recommended by the Probation Department is the appropriate book for the Court to use in determining whether Dr. Arndt is entitled to one or more of the requested downward departures. The government and Dr. Arndt both agreed in the Plea Agreement to use the 2002 Guideline Book. Both the 2003 and 2004 Guideline Books restrict and/or abolish the departures that were available to Dr. Arndt at the time of the offense conduct. As the First Circuit stated in United States v. Thurston; 358 F.3d 51 (1st Cir 2004), "When the guidelines in effect at the time of sentencing are more stringent than those in effect at the time of the offense, the later are normally used to avoid any limit of an ex port facto increase in penalty." Id. At 62.

(A)    Diminished Capacity

The Defendant has meet the requirements of § 5K2.13 because Dr. Amador in his report attached to the Pre-Sentence Report has concluded that Dr. Arndt, "evidenced a significantly reduced mental capacity during the time of the offenses he is accused of were committed. Furthermore, the diminished capacity contributed substantially to the commission of the aforementioned offenses." In addition, Dr. Amador concluded, "While at times his drug use was voluntary, at other times it was clearly involuntary. When symptoms of mood disorder and social stressors have been simultaneously exacerbated, the drug use was typically outside of his control."

Dr. Amador will testify at Dr. Arndt's sentencing hearing and provide a full clinical description of Dr. Arndt's significantly reduced mental capacity during the time of the offenses.

(B)    Extraordinary Acceptance of Responsibility

Dr. Arndt has demonstrated an extraordinary acceptance of responsibility by rejecting this Court's offer to allow him to withdraw his guilty plea. After counsel for Dr. Arndt read the Pre-Sentence Report he told Dr. Arndt that he had given him mistaken advise about his qualification for the safety valve. In addition, the government also acknowledged its belief that at the time Dr. Arndt signed the Plea Agreement it also believed Dr. Arndt qualified for the safety valve. Consequently, on November 28, 2005 during a hearing this Court advised Dr. Arndt that under these circumstances he could withdraw his plea of guilty. In response to the Court's inquiry Dr. Arndt stated the following:

> "When I appeared before you in June I assured you, under oath, that I was
> pleading guilty freely and voluntarily. I told you that I had signed the plea
> agreement because, in substance if not in exact detail, I was guilty as
> charged; that I was pleading guilty because I was guilty.

{K0317364.1}

9

Becoming a junkie, and everything that has followed from that, was far and away the most selfish and destructive think I've ever done. I've spent the past eighteen months struggling to make sense of what I did and who I became during that period and also trying to remember who I was before all of this.

Basically, I've been trying to find my way back to myself and one of the thinks that I've come to believe is that I can only get back to being who I was before all this by accepting full responsibility for, and coming to terms with, those actions which led to me appearing before this court.

In his poem Four Quartets, T.S. Eliot tells us, "The only wisdom we can hope to acquire is the wisdom of humility", that "humility is endless", and I suppose I've been discovering how true that is.

Well if truth and humility are the paths that I must take to find my way back to myself, and to my life, then I don't see how in good conscience I could now come before this court and attempt to change my plea, simply because it has become legally expedient for me to do so.

If it develops that the legal consequences I face are considerably more severe than I had anticipated when I entered my pleas then that is indeed, for me at least, quite unfortunate.

I cannot, however, use that as justification for not accepting responsibility for my actions, for rescinding a plea of guilty that I entered while under oath before this court.

I do not wish to change my plea."

If words mean anything this statement demonstrated Dr. Arndt's extraordinary acceptance of responsibility. Clearly, the Defendant has not tried to game or manipulate this case for his advantage. He clearly recognized the solemn nature of this Court proceeding and the importance of his oath to the Court to tell the truth.

Also, Dr. Arndt has tried on many occasions through counsel, to meet with the government to explain his ideas for better methamphetamine detection, treatment, and

punishment. Further, he has also tried to provide additional information about people and places associated with drug dealing.

Dr. Arndt's actions in demonstrating an extraordinary acceptance of responsibility are consistent with the case law granting this departure. For example, in United States v. Rothberg, 222 F.Supp. 2d 1009 (N.D. Ill. 2002) the Defendant pled guilty to copyright infringement without a plea bargain, and where, despite the government's refusal to file a motion for downward departure under U.S.S.G. § 5K1.1, the Defendant continued to cooperate with the government. The Defendant's actions showed acceptance of responsibility that was outside the heartland that warranted a two level departure. Also, in United States v. Nguyen, 212 F.Supp. 2d 1008 (N.D. Iowa 2002) the Defendant entered an Alford Plea to possessing 45 grams of crack and then testified in his sister's trial that he put the drugs in her handbag. This testimony resulted in her acquittal. The Court determined that the Defendant's behavior by exposing himself to increased criminal liability was an "extraordinary acceptance of responsibility" and granted an additional three level departure.

Finally, in United States v. Stewart, 154 F.Supp 2d 1336 (E.D. Tenn. 2001) the defendant pled guilty to possession of eight ounces of cocaine and did not seek to withdraw his plea even though the judge granted his co-defendant's suppression motion. This conduct caused the court to give the defendant an eight-level downward departure for extraordinary acceptance, in addition to the three standard levels for acceptance of responsibility.

Dr. Arndt's conduct in this case is consistent with these cases because he has demonstrated an "extraordinary acceptance of responsibility outside the heartland" by persisting in not withdrawing his guilty plea, at grave risk to himself, and repeatedly attempting to cooperate with the government.

{K0317364.1}

11

(C)    Vulnerability In Prison

Dr. Arndt has already spent over two and a half years in pre-trial detention for this offense. The majority of his incarceration has been in segregation in order to protect his physical safety because of his notoriety and homosexual life style.

This case has been the subject of significant ongoing media attention. There has been extensive print and electronic media coverage of his court appearances, a cover story in the Boston Globe Magazine, and many newspaper commentaries. After inmates learned about Dr. Arndt's case, the prison authorities in both Plymouth and Norfolk Counties had to place him in segregation. Currently, the prison officials in Norfolk County believe Dr. Arndt would be physically attacked if he were put back into population. While segregation has been difficult for Dr. Arndt he has worked hard to adjust by immersing himself in his religious studies. As a result of his vulnerability, Dr. Arndt has not been able to take advantage of the activities and educational opportunities otherwise available to other federal pretrial detainees. There is every reason to believe his pre-trial experience will continue when his federal incarceration commences.

The United States Supreme Court in Koon V. United States, 518 U.S. 81 (1996) held it was not an abuse of discretion to grant a downward departure to police officers convicted of a civil rights violation because of vulnerability in prison. Also, in United States v. Parish, 308 F.3d 1025 (9th Cir. 2002) the Court granted an eight level departure in a child pornography case in part because the defendant would have a "high susceptibility to abuse in prison" because of "his demeanor, his naiveté, and the nature of the offense." For example, a psychiatrist testified the Parish was in "for a hard time" in prison.

{K0317364.1}

12

The District Court in <u>United States V. Blarek</u>, 7 F.Supp. 2d 192 (E.D. N.Y. 1998) departed because of the defendants' homosexuality and his need to be removed from the general prison population. The courts have further recognized that segregated confinement is a more difficult type of confinement then general population. In <u>United States v. Noriega</u>, 40 F.Supp. 3d 1378, (S.D. Fla. 1999) the court reduced Noriega's sentence from 40 to 30 years primarily based on his segregated confinement. Finally, in <u>United States v. Volpe</u>, 78 F.Supp. 2d 70, 89 (E.D. N.Y. 1999) the court gave the defendant a two level downward departure because "the extraordinary notoriety of this case and the degree of general opprobrium toward Volpe. . ., coupled with his status of a police officer," left him "unusually susceptible to abuse in prison" and defendant may have to spend most of his time in segregation.

Dr. Arndt's experience in jail portends a very difficult federal prison incarceration. The case law demonstrates that Dr. Arndt's situation warrants a downward departure for "vulnerability in prison."

    (D) <u>David Arndt's Criminal History Over-represents The Seriousness of His Past Criminal Conduct or Overstates His Propensity To Commit Crimes</u>

The 2002 Guidelines that controls sentencing in this case does not prohibit a downward departure because the defendant's criminal history over-represents the seriousness of his past criminal conduct or overstates his propensity to commit crimes. There is no First Circuit opinion during the effective period of the 2002 Guidelines or prior thereto in any other Guideline that states this departure is prohibited or not available for safety valve cases. The subsequent 2004 Guidelines do prohibit this departure for safety-valve cases; however, it would be contrary to established law to apply a guideline not in effect at the time of the offense conduct. It is clear this would constitute an <u>ex part facto</u> penalty.

The Probation Department asserts that Dr. Arndt was on probation for a misdemeanor when two or three of the oxycotin offenses were committed. These offenses took place near the end of Dr. Arndt's three year probation. The triggering effect from his misdemeanor conviction would have a disproportionate effect on Dr. Arndt's sentence.

This Court has discretion to remedy this perverse result by applying the <u>departure</u> grounds in effect at the time of the <u>offense</u> to afford Dr. Arndt safety valve eligibility.

IV      The First Circuit Has Directed The District Courts To Apply <u>Booker</u> To Safety Valve Ineligible Cases

The First Circuit in <u>United States v. Feliz</u>, 453 F.3d 33 (1st Cir. 2006), while affirming the District Court's ruling that Feliz was ineligible to receive safety valve relief, nevertheless wrote, "What is left is the contention that the court misunderstood <u>Booker</u> when it imposed sentence. <u>Booker</u>, of course, rendered the Guidelines advisory, giving the district courts a freer hand to fashion appropriate sentences. The court here, however, did not exercise its new found freedom, concluding that the Guidelines recommended sentence was appropriate." <u>Id.</u> at 37. The language of the First Circuit is clear and unequivocal that this Court has the authority to apply <u>Booker</u> adjustments for Dr. Arndt even if it determines that he is not eligible for safety valve relief under the Guidelines.

The sentencing factors enumerated in 18 U.S.C. 3553 (a)(2) are preceded by the sentence, "The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purpose set forth in paragraph (2) of this subsection." Dr. David Arndt is a good person who has struggled since adolescence with a serious mental illness and drug addiction. While he has achieved outstanding academic success, his underlying untreated mental illness undermined his professional career and his personal life. As Dr. Amador will substantiate, Dr. Arndt's crimes

{K0317364.1}

14

were a product of a diminished capacity. While in pre-trial detention he has received no

treatment, yet he has attempted through self-reflection and religious commitment to change his

life. His medical skills and compassion could have accomplished great things for many gravely

ill patients. With professional help Dr. Arndt can some day become a very productive and

valuable citizen in society. His situation cries out for § 3553(a)(2) adjustments consistent with

the holding in United States v. Thurston, 456 F.3d 211 (1st Cir. 2006).

A ten year sentence or greater as recommended by the PSI would violate any fair analysis

of § 3553(a)(2) in conjunction with these facts. Recognizing that Dr. Arndt has already been

incarcerated for over two and one half years in very difficult, if not cruel conditions, this Court

has the freedom to fashion a reasonable non-guideline sentence

V.    Conclusion

For the reasons set forth herein, Dr. Arndt respectfully requests a sentence of five years

incarceration.

Respectfully submitted,

**DAVID C. ARNDT,**
By his attorneys,

Stephen R. Delinsky (BBO# 119120)
**ECKERT SEAMANS, CHERIN & MELLOTT, LLC**
One International Place, 18th Floor
Boston, MA 02110
Telephone: 617. 342.6800

DATED: December 6, 2006

**CERTIFICATE OF SERVICE**
I hereby certify that this document(s) filed through the
ECF system will be sent electronically to the registered
participants as identified on the Notice of Electronic Fil-
ing (NEF) and paper copies will be sent to those indi-
cated as non-registered participants on Dec. 6, 2006
By: _____

{K0317364.1}

15