UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CRIMINAL NO. |
| v.      ) | 04-CR-10166(RGS) |
| ) | |
| (1) DAVID CARL ARNDT    ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America respectfully submits that a Guidelines sentence within the range set forth in the PSR, 151 to 188 months, is appropriate for this defendant, based on the factors set forth in 18 U.S.C. § 3553(a).

**I.    The Defendant is Not Safety Valve Eligible**

Arndt argues that this Court should disregard his prior conviction because it was not charged in the indictment nor proven to a jury beyond a reasonable doubt. Arndt asserts that Shepard v. United States, 544 U.S. 13 (2005), indicated that the Supreme Court would soon be overturning Alemendarez-Torres v. United States, 523 U.S. 224 (1998), the Supreme Court case which established that a prior conviction is not an element of a crime to be proven to a jury. Arndt's argument has been specifically considered and repeatedly rejected by the United States Court of Appeals for the First Circuit, both in panels and en banc.

In United States v. Ivery, 427 F.3d 69, 75 (1st Cir. 2005), the First Circuit addressed an argument that Shepard had signaled the reversal of Alemendarez-Torres. The First Circuit stated:

> It is not our place to anticipate the Supreme

>    Court's reconsideration of its prior rulings;
>    thus <u>Almendarez-Torres</u> remains binding law
>    that we must apply until overruled by a
>    majority of the Supreme Court.

<u>United States v. Ivery</u>, 427 F.3d 69, 75 (1st Cir. 2005). The First Circuit revisited the issue <u>en banc</u>, with the same conclusion. <u>United States v. Jimenez-Beltre</u>, 440 F.3d 514, 520 (1st Cir. 2006) (en banc) ("Whatever the continuing viability of <u>Alemendarez-Torres</u>, we have previously held that we are bound to follow it until it is expressly overruled, and we see no reason to revisit that conclusion here." [citation omitted]). <u>See also</u> <u>United States v. Roberson</u>, 459 U.S. 39, 55 & n.11 (1st Cir. 2006) (rejecting argument).

Accordingly, Defendant's argument that this Court should ignore his prior conviction has no merit.

**II. Defendant is Not Entitled To Downward Departures.**

A. Diminished Capacity

Arndt claims that he meets the requirements of diminished capacity. His own documents show that he does not. Arndt engaged in deliberate, chronic use of illegal drugs. There is no basis for finding that he had a "significantly reduced" mental capacity as required for a departure pursuant to USSG § 5K2.13.

B. Extraordinary Acceptance

Arndt further claims that he is entitled to a downward departure for extraordinary acceptance of responsibility. He grounds this in two factors. First, he asserts that his decision

not to withdraw his plea despite learning that he was not safety valve eligible was "extraordinary."  This is without merit.  Arndt pled guilty after extensive proceedings regarding detention and after full discovery.  As demonstrated through the colloquoy at the guilty plea as well as through the statement of conduct set forth in the PSR, the government has overwhelming evidence of Arndt's guilt and numerous witnesses prepared to testify against him.  Arndt's decision not to withdraw his plea may well indicate a genuine acceptance of responsibility.  However, it may simply indicate acknowledgment that he will be convicted if he goes to trial.  Acceptance of the reality of the strength of the government's case is not "extraordinary" acceptance.

   Arndt's additional claim for "extraordinary" acceptance is his "repeatedly attempting to cooperate with the government."  The government proffered Arndt for safety valve purposes.  After the Probation department recognized that Arndt did not qualify for the safety valve, Arndt raised the possibility of cooperation.  In order to determine whether this offer could be of value to the government (rather than simply to Arndt), the government requested that Arndt submit an attorney proffer indicating what cooperation he could provide.  In response, Arndt offered seven topics.  First, he offered to provide information about the numerous persons who had cooperated against him, including financial information.  He offered to cooperate against

a supplier whom the DEA was already investigating (and who was subsequently indicted and convicted without Arndt's assistance). He also offered to provide information on drug dealing venues in the gay community, and admittedly-stale information about smaller drug dealers in the Boston community.  Finally, he offered to provide his insight into how to address the methamphetamine problem in the gay community.  The government considered Arndt's offer and determined that, having already proffered him once, Arndt's offer did not merit further investigation.

The government respectfully submits that this is not a demonstration of extraordinary acceptance.  A defendant's attempt to cooperate, after learning he is not safety valve eligible, does not constitute extraordinary acceptance of responsibility.

C.  Vulnerability

Arndt is not a national figure.  He is not a police officer. In sum, he does not fall into any category or special circumstance which would indicate that he will be at special risk in a general federal prison population in a location of the Bureau of Prisons' choosing.  Sadly, there are numerous gay methamphetamine dealers in the national Bureau of Prisons population, and there will be many more in the future, due to the addictive nature of the drug that Arndt was supplying.  While Arndt drew local and even national publicity in the short term through his decision to leave a patient on an operating table

while he went to a bank, and through the choice of packaging for the methamphetamine he received at the Chandler Hotel, there is simply no basis to assert that he cannot be housed in general population at a federal prison away from Massachusetts.

     D.   Criminal History

Arndt claims that he is entitled to a reduction because his criminal history is overstated. As addressed more thoroughly in the next section, Arndt's criminal history category fairly states, or understates, the seriousness of his past crimes. Therefore, this argument has no merit.

**III. Defendant's Criminal History Category is Appropriate.**

Defendant Arndt claims that his criminal history is over-stated. The PSR shows that his criminal history category is well-earned, and arguably understates his true criminal background.

Defendant was charged in 1998 with a felony of making false statements, 18 U.S.C. § 1001, after he executed a State Department form falsely identifying his domestic partner, Alfredo Fuentes, as a person named "Timothy Mason," whom he had "known for ten years." By his own report, this was not Arndt's first participation in questionable immigration papers. Although himself a homosexual, he reports that he married a homosexual woman in India to "help" her to leave India. See PSR at ¶ 79, ¶ 98.

Arndt sought to dismiss the federal indictment, arguing that he was forced to engage in immigration fraud because as a homosexual male, he did not have the same opportunity to marry to avoid deportation that heterosexuals do.  After this motion was denied, Arndt was given the opportunity to plead to an information charging him with a misdemeanor rather than a felony. See Louisiana Files, filed herewith as Exhibit 1.  He did so. Id. Arndt was ordered to undergo drug treatment as a condition of probation.  Instead, he used drugs.  PSR ¶59, ¶ 104.

Defendant was charged with breaking and entering, assault and battery, and assault with a deadly weapon on August 31, 1998, while his federal immigration charges were pending.  According to the report of defendant's expert, the victim "agree[d] not to press charges as part of a settlement."  Def. Exp. Report at page 18.  See PSR ¶ 67.

Arndt was on probation for the Louisiana federal charges until January 26, 2002.  Between October 2001 and May 2002, Arndt issued 22 prescriptions for Charles Ghera, a methamphetamine supplier who was not a patient of Arndt's.  PSR ¶ 28.  Three of these prescriptions were for oxycodone, a Schedule II controlled substance, while Arndt was still on probation. PSR ¶ 30.

The government respectfully submits that this conduct shows that Arndt's criminal history is not overstated.  To the contrary, Arndt received multiple "breaks" from the criminal

justice system, in the form of dropped or reduced charges, and each time broke new laws in response.  Arndt's criminal history was hard-earned.  It appropriately reflects his repeated failure to conform his conduct to the law.

### IV. Congressional Sentencing Factors Demand Parity in this Case.

Under 18 U.S.C. § 3553(a), the court must impose a sentence sufficient to reflect the seriousness of the offense, to afford adequate deterrence, to protect the public from future crimes of the defendant, and to provide the defendant with adequate correctional treatment.  See 18 U.S.C. § 3553(a)(1) and (a)(2).  In so doing, the Court must consider the Guidelines, 18 U.S.C. § 3553(4)(A) and must also consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.  18 U.S.C. § 3553(6).

In this case, these factors demand a Guidelines sentence.  Nothing short of a Guidelines sentence will adequately reflect the seriousness of defendant's lawless conduct.

This defendant has in the past had every opportunity that money could buy.  He has squandered opportunities that most defendants accused of similar conduct could never even dream of.  He had a supportive family, an intelligent mind, and the education to shape it.  He had multiple warnings that his conduct was problematic, and repeated opportunities to conform to lawful behavior with no permanent consequence from his prior failures.  Having rejected each of those opportunities, justice demands that

he now be sentenced based on the conduct he chose to undertake: a kilo-level methamphetamine dealer with a criminal history of II. Arndt should receive a sentence within the 151 to 188 month range set forth in the Guidelines.

                    Respectfully submitted,
                    MICHAEL J. SULLIVAN
                    UNITED STATES ATTORNEY

By:  */s/ Nancy Rue*
     NANCY RUE
     Assistant U.S. Attorney
     United States Courthouse
     One Courthouse Way
     Boston, MA
     (617) 748-3260

Dated: December 18, 2006

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                    /s/ Nancy Rue
                    Nancy Rue
                    Assistant United States Attorney

Date:    December 19, 2006