UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>V. )<br>)<br>DAVID C. ARNDT )<br>)<br>) | Criminal No.: 04-CR-10166-RGS |

## SUPPLEMENTAL SENTENCING MEMORANDUM OF DAVID C. ARNDT

The Defendant David C. Arndt submits this Supplemental Sentencing Memorandum in accordance with the Order of District Court Judge Richard G. Stearns following the sentencing hearing of December 19, 2006. This memorandum address the two questions posed by the Court at that time. These are whether a District Court Judge has the power to find that a Defendant's criminal history category has been overstated and whether or not Defendant David C. Arndt is eligible for safety valve consideration under 18 U.S.C. 3553(f)(1).

### I.    The Court Has Authority to Find that the Defendant's Criminal History Category Has Been Overstated.

The District Court clearly has the authority to find that the Defendant's Criminal History Category ("CHC") has been overstated. However, more importantly, the Court also has the authority to find that the Defendant's Criminal History Point ("CHP") total has been overstated. The Court has plenary sentencing authority under 18 U.S.C. 3553(a) to render a sentence that is, "sufficient but not greater than necessary to comply with the purposes set forth in paragraph 2 of the subsection[a]." The Plea Agreement between the government and the Defendant stipulated

that the Federal Sentencing Guidelines that were in effect in 2002 would govern. The 2002 Sentencing Guidelines Book, Section 5C1.2 (a)(1) reads as follows:

(a) "Except as provided in subsection (b), in the case of an offense(s) under 21 U.S.C. sections 841, 844, 846, 960 or 963, the Court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence, if the Court finds that the Defendant meets the criteria listed in 18 U.S.C. section 3553(f)(1)-(5) set forth verbatim below:

(1) the Defendant does not have more than one criminal history point as determined under the sentencing guidelines."

This provides the legal authority the Court needs in order to find an overstatement in the CHP total and the CHC. Further, 18 U.S.C. 3553(f) requires the Court to, "impose a sentence pursuant to the guidelines." These require the Court to make a finding of the Defendant's CHP total and the CHC. It is important to note that while a later edition of the U.S.S.G. was changed to prohibit a downward departure for safety valve eligible Defendants who came within CHC I with more than one CHP (*see Amendment 651 to the 2004 U.S.S.G.*), at the time that the 2002 U.S.S.G. were in effect no such prohibition existed.

Reported case law from the District Court for the District of Massachusetts also provided authority for a finding that the CHC has been overstated due to the failure to consider diminished capacity. In *U.S. v. Person, 377 F.Supp.2d 308, 309-310 (2005)* Judge Ponsor found that the Defendant's criminal history had been overstated and also found that the Defendant's diminished capacity (he had suffered a sever psychological injury as a young child) was a factor justifying a downward departure. Additionally, circuit court opinions from the First Circuit and other jurisdictions provide authority for the finding of an overstatement in the CHC. *U.S. v. Delgado-*

{K0340169.1}-2-

*Reyes, 245 F.3d 20 (1st Cir. 2001), U.S. v. Boddie, 318 F.3d 491 (3rd Cir. 2003), U.S. v. Lindia, 82 F.3d 1154 (1st Cir. 1996), U.S. v. Penn, 282 F.3d. 879 (6th Cir. 2002) and U.S. v. Langmade, 236 F.3d 931 (8th Cir. 2001).* A search of the First Circuit case law revealed no opinions interpreting the 2002 U.S.S.G. (that are applicable to the instant case) as prohibiting a judge from reducing a CHC in safety valve cases. In fact, there is substantial authority permitting the Court to find an overstatement in the Defendant's CHC. *United States v. Mayes, 332 F.3d 34, 36 (1st Cir. 2003), United States v. Hoyle, 237 F.3d 1, 20-21 (1st Cir. 2001) and United States v. Lindia, 82 F.3d 1154, 1165(1st Cir. 1996).*

## II. The Defendant is Eligible for Safety Valve Exception Relief:

### 1. The Defendant Suffered From Diminished Capacity at the Time of the Instant Offense(s).

The Defendant qualifies for safety valve relief under 18 U.S.C. section 3553(f)(1)-(5) as a result of his Diminished Capacity per U.S.S.G 5K2.13. The Defendant was not given proper credit for having suffered from Diminished Capacity at the time of the instant offense(s) when his CHPs were calculated. As a result, his CHPs and his CHC have been significantly overstated. If properly credited with suffering from diminished capacity at the time the instant offense(s) was committed, the Defendant's CHC would qualify him for safety valve relief. The Probation Department calculated the Defendant's criminal history category at Level 3 *(see the Presentencing Report, pp. 15-16).* The Defendant vigorously disputes the accuracy of this calculation and instead believes that his actual, proper Criminal History Point total should be 1 and his Criminal History Category(CHC) should be Level 1.

U.S.S.G. 5K2.13, as per the 2002 U.S.S.G., outlines the criteria for reductions based upon Diminished Capacity. This section describes Diminished Capacity as, "significantly reduced mental capacity." This term is defined in the Commentary following section 5K2.13 as, "a

significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense(s) or to exercise the power of reason; or (B) control behavior that the Defendant knows is wrongful." There is no evidence of any of the disqualifying factors for Diminished Capacity outlined in section 5K2.13 are present in the instant case. The First Circuit has interpreted Diminished Capacity to mean:

> "that § 5K2.13 does not require that reduced mental capacity be the "but-for" or "sole" cause of the offense(s). The key words of the section are: 'a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense(s). . . .' This means, as we interpret it, that the reduced mental capacity of a Defendant must have contributed to *some* extent to the commission of the offense(s)." *United States v. Lauzon,* 938 F.2d 326, 331 (1st Cir. 1991)

Based on the diagnosis, opinion and testimony of Dr. Xavier Amador's report and testimony at the sentencing hearing, and based on the diagnosis and opinion of Dr. Michael Fayne, Ph.D., the Defendant has proven that he meets the criteria of section 5K2.13 of the U.S.S.G. and is entitled to credit in the CHP and CHC calculus for diminished capacity. The Defendant's history of personality disorders and mental illness was described in detail during the testimony of Dr. Xavier Amador, Ph.D., during the sentencing hearing on December 19, 2006. During his testimony, and in his written report attached to the Pre-Sentencing Report, Dr. Amador found that the Defendant, "evidenced a significantly reduced mental capacity during the time of the offense(s) he is accused of were committed. Furthermore, the diminished capacity contributed substantially to the commission of the aforementioned offense(s)." Dr. Amador also found that, "While at times his drug use was voluntary, at other times it was clearly involuntary. When symptoms of mood disorder and social stressors have been simultaneously exacerbated, the drug use was typically outside of his control."

The Defendant also presented a second expert opinion that the he suffered from a Diminished Capacity at the time of the instant offense(s). This was the report of Dr. Michael Fayne, Ph.D. who submitted his report at the time of the Presentencing Report. Dr. Fayne's diagnosis was that the Defendant suffered from a variety of mental disorders including Major Depressive Disorder, 296.3/ Bipolar II Disorder 296.89 and Methamphetamine Dependence at the time of the instant offense(s). Dr. Fayne's opinion and diagnosis corroborates Dr. Amador's testimony. Most importantly, both Amador's and Fayne's opinions stand uncontroverted by any expert testimony from the government. In the absence of any contrary evidence their opinions alone are sufficient to establish Diminished Capacity.

In fact, the government's entire response to the evidence of Diminished Capacity was a four sentence accusation on page two of its Sentencing Memorandum claiming that the Defendant's conduct during the instant offense(s) was the product of, "deliberate, chronic use of illegal drugs." Far from a refutation of the Defendant's argument establishing Diminished Capacity, the government goes as far as to acknowledge that the Defendant's drug use was "chronic". This is not harmful to the Defendant's argument and confirms one of the findings of Dr.s Amador and Fayne. It is important to note that since the Defendant has been in custody in both the state and federal trial systems he has never been provided treatment for his severe mental health illness or his drug addiction. It is also important to note that the burden of establishing safety valve eligibility and Diminished Capacity, while falling to the Defendant, is a mere preponderance of the evidence. The opinions of two persuasive, well-credentialed experts measured against no contrary evidence meets and far exceeds this burden of proof.

It is worth noting that the 2004 U.S.S.G. changed the definition of Diminished Capacity by adding a paragraph restricting its application and toughening the standard. Among other

things, the 2004 section 5K2.13, second paragraph, excluded from the definition of Diminished Capacity those cases where a Defendant's significantly reduced mental capacity, "was caused by the voluntary use of drugs or other intoxicants." Dr. Amador testified that the Defendant met both the lower standard from the 2002 guidelines and the heightened standard from the 2004 guidelines.

In its Presentencing Report, the Probation Department cites the Defendant's status as a probationer on probation from a misdemeanor conviction in the Eastern District of Louisiana in 1999 for fraud at the time of the instant offense(s) as a justification for adding two points to his CHP total. Under the Probations Department's computation this increased the Defendant's CHP total by two points from Level 1 to Level 3. This also had the effect of elevating the Defendant's CHC to Level II. However, there are additional facts which renders this analysis to be incomplete. The pertinent facts also must include recognition that the instant offense(s) was committed during the final three months of a three year probationary sentence that the Defendant was serving. At the time of this offense(s) the Defendant was under the supervision of the probation department of the federal district court for the Eastern District of Louisiana from January 27, 1999 until January 28, 2002. The Defendant served on federal probation with only one transgression for which he was required to undergo more frequent cocaine screens (see PSR p.15). The first two years and nine months of this probationary period went without any other incidents or offense(s). However, in October of 2001 and then again in January of 2002 (Counts III, IV and V of the indictment dated October 10, 2001, January 24, 2002 and January 26, 2002) the Defendant allegedly distributed a controlled substance (oxycodone). These late transgressions came at the tail end of his three year probationary period. It is this conduct that earned him the additional two CHPs and enhanced his CHC to a Level II. Further, it is this

conduct which Dr. Amador referenced when he stated in his report that this period of the drug addiction was a consequence of his diminished capacity *(Amador Report, p. 10-11)*. It is important to note that Dr. Amador found the period of the fall of 2002 through August 2003 to be the most acute period of his drug use. Dr. Amador also found that, "When symptoms of mood disorders and social stressors have been simultaneously exacerbated, the drug use was typically outside of his control." *(Amador Report, p. 5)*. The period of time during which the Defendant committed the instant offense(s) was just such a period according to Dr. Amador.

> "However, as a consequence of the mental disorders, Mr. Arndt evidenced a significantly reduced mental capacity during the time of the offense(s) he is accused of were committed. Furthermore, the diminished mental capacity contributed substantially to the commission of the aforementioned offense(s). In particular, the drug use which is an associated feature and consequence of the mood disorder caused significant diminished mental capacity." *(Amador Report, p. 4-5)*.

Most importantly, Amador found, "David Arndt was suffering from Bipolar II, Major Depressive, and Substance Dependency Disorders in the months prior to and during the time of the offense(s) he is charged with were allegedly committed." *(Amador Report, p. 5)*. Ultimately, Amador found that during the period of the instant offense(s) were committed, the Defendant experienced a, "worsening of symptoms of mood disorder coupled with the severe stress of losing his license to practice medicine, the intense medial scrutiny that followed, poor social support, and the loss of his means to make an income, together led him back to a pattern of daily involuntary drug use." *(Amador Report, p. 11)*. As a result, the Defendant suffered from a substantially diminished capacity during the time that he committed the drug offense(s) described in Counts III, IV and V of the instant indictment while he was simultaneously on probation. The Probation Department does not recognize any mental health disorders or involuntary drug use on the part of the Defendant anywhere in its report. The failure to fully consider these factors led to an overstatement of both the Defendant's CHP total and his CHC.

Accordingly, the Defendant should not have been given the additional two points on the CHC, especially in light of the near completion of his probationary term and that his commission of this instant offense(s) was involuntary.

Proper consideration of the Defendant's Diminished Capacity would result in his CHP total being calculated at 1 and that his CHC would be at Level II. This would make the Defendant safety valve eligible under U.S.S.G. section 5C1.2 and 18 U.S.C. 3553(f) as he would then have not more than one criminal history point. Both U.S.S.G. section 5C1.2 and 18 U.S.C. 3553(f) require no more than one criminal history point to qualify for safety valve consideration.

The Defendant is also safety valve eligible as circumstances have changed since the time the Presentencing Report was written. The Court has had the chance to see Dr. Amador testify under oath, subject to cross-examination. As a result the Court has been able to assess his testimony firsthand and to ask him questions from the bench concerning his testimony at the sentencing hearing. Dr. Amador's testimony was concontroverted and there is no counterveiling expert testimony on the record. Additionally, the Court credited Dr. Amador's testimony at the conclusion of the hearing. This was information that the Probation Department lacked or did not fully consider when they made their calculation. The Defendant is entitled to the benefit of U.S.S.G. section 5K2.13 and the credit for diminished capacity during the time of the commission of the instant offense(s).

### 2. The Defendant's Conduct in the Instant Offense(s) Did Not Qualify as "Relevant Conduct" Under U.S.S.G. Section 4A1.1(d) Due to His Diminished Capacity.

As a result of suffering from Diminished Capacity during the commission of the instant offense(s), the three criminal acts committed by the Defendant while still under supervision were not "relevant conduct" for the purposes of U.S.S.G. section 4A1.1(d). Accordingly, the

Defendant should not have been assessed two additional CHPs because of it. "Furthermore, U.S.S.G. § 5C1.2, written to interpret § 3553(f), similarly provides that, to be eligible for the safety valve provision, the Defendant must have, '[no] more than 1 criminal history point, as determined under the sentencing guidelines.' U.S.S.G. § 5C1.2(1). The commentary that accompanies the guideline interprets this passage to mean 'more than one criminal history point as determined under § 4A1.1 (Criminal History Category).' U.S.S.G. § 5C1.2 comment. (n.1). Section 4A1.1 is the schedule that specifies how a sentencing court should calculate a Defendant's criminal history points." *United States v. Resto, 74 F.3d 22 (2nd. Cir 1996)*. The Commentary following Section 4A1.1(d) adds that, "Two points are added if the Defendant committed any part of the instant offense(s) (i.e., any relevant conduct) while under any criminal justice sentence, including probations, parole, supervised release, imprisonment, work release, or escape status." It is evident that that part of the instant offense(s) committed while the Defendant was on probation was not relevant in that it came in the last months of his supervision (before which he had been virtually problem-free) and due to his diminished capacity and involuntary drug use occurring during that time. Accordingly, he should not have been given the additional two points on the CHC, especially in light of the near completion of his probationary term and that his commission of this instant offense(s) was involuntary.U.S.S.G. section 5C1.2 and 18 U.S.C. 3553(f).

Since the Defendant is safety valve eligible the Court must consider his further eligibility for downward departures for Diminished Capacity, Extraordinary Acceptance, Vulnerability and Criminal History. These arguments have been presented in the Sentencing Memorandum of David C. Arndt previously filed and are hereby incorporated by reference.

### III. Conclusion

The Defendant's CHP total and CHC have been overstated as a result of the failure to properly consider his Diminished Capacity at the time of the instant offense(s). This Diminished Capacity rendered the conduct underlying Counts III, IV and V of the instant indictments not relevant for the purposes of calculating the Defendant's CHP total and CHC. Proper consideration of these factors would have led to a CHP total of 1 and a CHC of Level I making the Defendant eligible for safety valve relief under 18 U.S.C. 3553(f). As a result, the Defendant is entitled to the other departures previously described in the Defendant's Sentencing Memorandum. Accordingly, the Defendant re-asserts his recommendation that a five year sentence is sufficient, but no greater than necessary, to comply with 18 U.S.C. 3553.

Respectfully submitted,

David C. Arndt
By his Attorney:

/s/ Stephen R. Delinsky

Stephen R. Delinsky (BBO# 119120)
Robert M. Delahunt Jr.(BBO # 556390)
**ECKERT SEAMANS, CHERIN & MELLOTT, LLC**
One International Place, 18th Floor
Boston, MA 02110

DATED: February 5, 2007      Telephone: 617. 342.6800

**CERTIFICATE OF SERVICE**
I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on 2-5-07
By: /s/ Stephen R. Delinsky